913 F.2d 273
 ALLSTATE INSURANCE COMPANY, Plaintiff Counter-Defendant-Appellee,
v.
Dawn MERCIER, Adam Mair, Defendants.
Appeal of Patricia J. ALLMAND, Personal Representative of
the Estate of Wesley Roland Allmand, Deceased,
Defendant Counter-Plaintiff.
 No. 89-1889.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 15, 1990.
Decided Sept. 4, 1990.
 
 Joseph Kochis [COR NTC ret] Rosalind Rochkind (argued), Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for plaintiff-appellee.
 Carl M. Riseman, F. Anthony Lubkin (argued), Lapeer, Mich., for defendant-appellant.
 Before KRUPANSKY and NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 The issue for decision in this appeal is the appropriateness of a federal declaratory judgment determining liability of a party under a contract for tort damages being sought in a state court action. This court has attempted in recent years to prescribe a workable approach to deciding when it is appropriate for a district court to proceed in such cases under the discretionary jurisdiction granted by the Declaratory Judgment Act of 1934, 28 U.S.C. Sec. 2201. See e.g., Grand Trunk W. R.R. Co. v. Consolidated Rail Corp., 746 F.2d 323 (6th Cir.1984); American Home Assurance Co. v. Evans, 791 F.2d 61 (6th Cir.1986); Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460 (6th Cir.1986); Allstate Ins. Co. v. Green, 825 F.2d 1061 (6th Cir.1987). Our decisions following Grand Trunk have focused on federal declaratory actions by insurers to obtain rulings on their duty to indemnify their insureds who have been sued in state tort actions.
 
 I.
 
 2
 Allstate brought this action in the district court seeking a declaration that it owed neither indemnification nor a defense to parties insured under Allstate homeowners policies who had been sued for tort damages in a Michigan state court. Allstate named as defendants its two insureds, Dawn Mercier and Adam Mair, as well as the plaintiff in the state tort action, Patricia J. Allmand, representing the estate of Wesley Roland Allmand. All defendants are Michigan residents. Allstate is a citizen of Illinois for jurisdictional purposes, and jurisdiction in the district court was based on diversity of citizenship.
 
 A.
 
 3
 On October 10, 1988, Patricia Allmand filed an amended complaint in a Michigan court against Dawn Mercier and Adam Mair pursuant to Michigan's Wrongful Death Act, Mich.Comp.Laws Ann. (MCLA) Sec. 600.2922. The complaint alleged that on October 12, 1985, Gary Todd Jaynes drove his car in a southerly direction in the northbound lane of a highway, thereby causing a head-on collision with Wesley Allmand, and that at the time of the collision Jaynes was operating his vehicle at a very high rate of speed and in an intoxicated condition.
 
 
 4
 The complaint alleged that the defendants Dawn Mercier and Adam Mair owed to the public and Wesley Allmand the following duties:
 
 
 5
 (a) To refrain from knowingly selling and/or furnishing alcoholic liquor to a person less than 21 years of age pursuant to MCLA Section 436.33 and the common laws;
 
 
 6
 (b) To make diligent inquiry as to whether a person is less than 21 years of age before selling and/or furnishing a person with alcoholic liquor pursuant to MCLA Section 436.33 and the common laws.
 
 
 7
 The complaint further alleged that Dawn Mercier and Adam Mair violated these duties by knowingly selling and/or furnishing alcoholic liquor to Jaynes, a person who was then less than twenty-one years of age and by selling and/or furnishing alcoholic liquor to Jaynes without making diligent inquiry as to whether he was less than twenty-one years of age. Finally, the complaint alleged that as a proximate result of Mercier and Mair's negligent acts and/or omissions, Jaynes operated his motor vehicle in an intoxicated condition and caused the collision with Wesley Allmand in which Allmand sustained serious injuries that led to his death.
 
 
 8
 At the time of the accident in 1985, Dawn Mercier and Adam Mair resided with their parents and were insured persons under Allstate Deluxe Homeowners policies covering their parents' dwellings. In addition to covering the dwellings, the policies provided other coverage including "family liability protection." The summons and complaint filed by Patricia Allmand against Mercier and Mair were tendered to Allstate for coverage and defense under these homeowners policies. Allstate provided a defense to Mercier and Mair under a strict reservation of rights.
 
 B.
 
 9
 Allstate filed this federal action for declaratory relief on February 6, 1989, while Allmand v. Mercier and Mair was pending in state court. Allstate alleged that an actual controversy existed with reference to coverage for the Allmand claims because of two exclusions from family liability protection in the homeowners policies:
 
 Exclusions--Losses We Do Not Cover
 
 10
 1. We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
 
 
 11
 * * * * * *
 
 
 12
 5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle or trailer.
 
 
 13
 These exclusions followed a very broad insuring clause:
 
 
 14
 We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.
 
 
 15
 Allstate requested the district court to enter a declaratory judgment finding as follows:
 
 
 16
 A. That the acts alleged against Dawn Mercier and Adam Mair in ... [Allmand v. Mercier and Mair ] were designed, intended or expected to result in personal injury.
 
 
 17
 B. That the acts alleged against Dawn Mercier and Adam Mair resulted in bodily injury which arose out of the ownership, maintenance and use of a motorized land vehicle.
 
 
 18
 C. That the exclusions contained in the Allstate contract of Homeowners Policy void liability coverage for such intentional acts and intended or expected injuries and for bodily injury arising out of the ownership, maintenance and use of a motorized land vehicle.
 
 
 19
 D. That since Allstate owes no coverage, it is also relieved from providing a defense to Dawn Mercier and Adam Mair and may, accordingly, withdraw counsel presently appearing on behalf of Dawn Mercier and Adam Mair in the underlying lawsuit.
 
 
 20
 E. That damages sought in the underlying lawsuit are not covered by the Allstate Policies of Deluxe Homeowners Insurance.
 
 
 21
 Patricia Allmand answered Allstate's complaint. In her answer, she stated that her allegations as to Mercier and Mair did not arise out of the ownership, maintenance or use of any motor vehicle and that their acts did not constitute intentional acts as defined in the policy. Mercier and Mair failed to answer and Allstate has taken a default judgment against them.
 
 
 22
 After further pleading Allstate made a motion for summary judgment on the basis of the two policy exclusions. There was no discovery, but the district court held a hearing on the summary judgment motion, at which counsel presented arguments that have been repeated on appeal. At the conclusion of the hearing the District Judge advised counsel that he would enter summary judgment for Allstate. In a memorandum opinion filed with the order for summary judgment the District Judge stated that the motor vehicle exclusion relieved Allstate "from its obligations under the policy because the liability giving rise to the tort was triggered by the negligent operation of a motor vehicle." The order for summary judgment stated that Allstate did not owe "any insurance coverage" to Mercier and Mair under the homeowners policies, and further, that it had no "duty to provide a defense" in the state court action. The order concluded, "FURTHER, Allstate Insurance Company is not responsible for any damages obtained in the underlying lawsuit against Dawn Mercier and Adam Mair."
 
 
 23
 The district court did not refer to the discretionary nature of its jurisdiction under the Declaratory Judgment Act, either at the hearing, in its memorandum opinion, or in its order for summary judgment. Patricia Allmand appeals.
 
 II.
 
 24
 The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. Sec. 2201. The Supreme Court has repeatedly emphasized the discretionary nature of the Act. In Public Affairs Press v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962), the Court stated:
 
 
 25
 The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 499 [62 S.Ct. 1173, 1175, 1177-78, 86 L.Ed. 1620 (1942) ]; Great Lakes Co. v. Huffman, 319 U.S. 293, 299-300 [63 S.Ct. 1070, 1073-74, 87 L.Ed. 1407 (1943) ]; Federation of Labor v. McAdory, 325 U.S. 450, 462 [65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945) ]; Mechling Barge Lines v. United States, 368 U.S. 324, 331 [82 S.Ct. 337, 341-42, 7 L.Ed.2d 317 (1961) ]. Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank, 333 U.S. 426, 431 [68 S.Ct. 641, 644, 92 L.Ed. 784 (1948).
 
 
 26
 Id. at 112, 82 S.Ct. at 582. More recently, in Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), the Court stated that the statute " 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' " Id. at 72, 106 S.Ct. at 428 (quoting Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)).
 
 
 27
 This court reviews a district court's exercise of discretion under the Declaratory Judgment Act de novo. Grand Trunk, 746 F.2d at 325-26; American Home Assurance Co., 791 F.2d at 63. We have stated that in conducting such a review we apply two criteria and consider five factors:
 
 
 28
 We apply the following general principles in determining whether a declaratory ruling is appropriate:
 
 
 29
 The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.
 
 
 30
 E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941), cited with approval in Broadview Chemical Corp. v. Loctite Corp. [417 F.2d 998 (2nd Cir.1969) ] supra, Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co., 177 F.2d 942, 944 (6th Cir.1949); Maryland Cas. Co. v. Boyle Constr. Co., 123 F.2d 558, 565 (4th Cir.1941). See also Wright, Miller & Kane, supra, at 657 n. 5. We thus consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.
 
 
 31
 Id. at 326.
 
 
 32
 These same criteria and factors provide the basis for a district court's exercise of its discretion. When the record contains no indication that the district court considered these criteria and factors, this court has the option either to apply them on appeal or to remand to the district court for this exercise. See Grand Trunk, 746 F.2d at 327 (criteria and factors applied and district court directed to dismiss the action); American Home Assurance Co., 791 F.2d at 64 (same); Manley, Bennett, McDonald & Co., 791 F.2d at 463 (same); Allstate Ins. Co. v. Green, 825 F.2d at 1067 (remanded to district court for consideration of principal criteria and application of factors).
 
 
 33
 As the court pointed out in Allstate v. Green, there is no per se rule against a district court's entertaining a declaratory judgment action to determine an insurer's liability when a tort action is pending against its insured in a state court. Both the Supreme Court and this court have approved the use of declaratory judgment actions by insurers under such circumstances. See, e.g., Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); American States Ins. Co. v. D'Atri, 375 F.2d 761 (6th Cir.1967). Nevertheless, we have stated that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." Manley, Bennett, McDonald & Co., 791 F.2d at 463.
 
 III.
 A.
 
 34
 The district court recognized that the application of Exclusion 1, which relates to intentional or criminal acts, was problematic, and did not rely on that exclusion in granting summary judgment to Allstate. As the court pointed out in colloquy with counsel, the record does not establish whether Mercier and Mair intentionally or negligently furnished liquor to Jaynes, and what efforts, if any, they made to learn his age. If Mercier and Mair furnished liquor to Jaynes, their actions violated a Michigan criminal statute if they also knew that he was less than twenty-one years of age or if they negligently failed to ascertain Jayne's age. Since there is absolutely no record on this issue, the district court declined to hold that Exclusion 1 applied as a matter of law. We agree that this issue was not susceptible to a summary judgment disposition.
 
 
 35
 The district court granted summary judgment to Allstate on the basis of Exclusion 5, which withdraws coverage for bodily injury "arising out of the ownership, maintenance, use, loading or unloading" of a motor vehicle. Ownership, maintenance, use and loading or unloading all imply some degree of control or right to possession of a vehicle. If the purchaser of a homeowners policy could reasonably assume that Exclusion 5 applied only to injury involving a vehicle over which the insured homeowner had some measure of control, the question of what connection, if any, the insureds had to the automobile being operated by Jaynes at the time of the accident would be critical.
 
 B.
 
 36
 The record before us is virtually devoid of facts about the underlying tort action. We have only the complaint filed by Patricia Allmand against Mercier and Mair; there are no depositions or other discovery documents. We cannot ascertain from the record where or when the defendants allegedly furnished liquor to Jaynes; in particular, whether this occurred on one of the insured premises, or elsewhere. Further, there is no indication that either Mercier or Mair, or a parent of either, was the owner of or had a right to possession of the automobile operated by Jaynes at the time of the accident that resulted in Wesley Allmand's death. These facts would necessarily be developed at a trial of the tort action, and may have a direct bearing on the determination of whether the insuring clause of the homeowners policies, or the exclusions, control Allstate's obligations.
 
 
 37
 Courts should not be required to decide "rights and other legal relations" in a vacuum. The language of the policy exclusions is broad, but the insuring language is also broad, and we cannot say with certainty that those exclusions preclude a finding of coverage in the present case. Without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts.
 
 
 38
 We realize that Allstate is not a party in the underlying tort action and cannot be made a party. MCLA Sec. 500.3030. But Michigan does have a procedure for obtaining a declaration of "the rights and other legal relations of an interested party seeking a declaratory judgment." Michigan Court Rule 2.605 (1989). Declaratory judgments may be rendered by a Michigan court of record "[i]n a case of actual controversy within its jurisdiction." Id. The insurer can bring such an action prior to trial of the principal tort action. See Group Ins. Co. v. Morelli, 111 Mich.App. 510, 513-14, 314 N.W.2d 672 (1981). Thus, Allstate could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action. We believe that the Michigan court would be in a superior position to address the legal issues on which Allstate seeks a declaration of rights.
 
 C.
 
 39
 We do not believe a declaratory judgment in the present case satisfies either of the two principal criteria identified in Grand Trunk. It does not serve a useful purpose in clarifying and settling the legal relations between the insurer and the insureds, because the policy exclusions can be applied only in the light of factual determinations that have not been made. And, in view of the paucity of the record, the declaratory judgment cannot properly terminate the controversy.
 
 
 40
 Furthermore, it is clear that at least four of the Grand Trunk factors indicate strongly that a federal declaratory judgment was inappropriate in the present case. We cannot say on the basis of the record that Allstate filed this action only for the purpose of "procedural fencing" or to win "a race for res judicata." 746 F.2d at 326. Nevertheless, taken together, the other four factors weigh on the side of declining to exercise the court's discretionary jurisdiction.
 
 
 41
 As our discussion of the record demonstrates, a declaratory action at this stage of the proceedings "would [not] settle the controversy." Id. The collateral liability aspect of the proceedings would continue in state court regardless of the federal court's ruling. While a declaratory judgment might "serve a useful purpose in clarifying the legal relations in issue," this clarification would come at the cost of "increas[ing] friction between our federal and state courts and improperly encroach[ing] upon state jurisdiction." Id. The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation. Finally, "there is an alternative remedy which is better or more effective." Id. We have indicated that Michigan provides such a remedy in the very court where the state tort action is pending.
 
 CONCLUSION
 
 42
 In American Home Assurance Co., 791 F.2d at 65, we stated:
 
 
 43
 The Declaratory Judgment Act allows the federal court, in the exercise of sound discretion, to depart from their usual practice of refusing to issue advisory opinions. Where complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate.
 
 
 44
 It is true that in the present case the federal declaratory judgment action does not "parallel[ ] a state court action arising from the same facts" in the sense that different legal issues are presented by the pleadings. Nevertheless, the federal action does parallel the state action in the sense that the ultimate legal determination in each depends upon the same facts. And, there is an alternate state remedy by which the legal determination sought in the federal declaratory judgment action may be made on the basis of a well-developed factual record, rather than on the basis of a barren record.
 
 
 45
 The judgment of the district court is reversed and the case is remanded with directions to dismiss the complaint.