**BITUMINOUS CASUALTY CORPORATION,**
Plaintiff,

v.

**COMBS CONTRACTING INC.,**
et al., Defendants.

No. CIV.A.02–54–DLB.

United States District Court,
E.D. Kentucky,
Pikeville.

Dec. 23, 2002.

Robert E. Maclin, III and Pamela Adams Chesnut of McBrayer, McGinnis, Leslie & Kirkland, Lexington, KY, for Plaintiff.

Randall Ancil Campbell, Adam P. Collins of Campbell Collins, Hindman, KY, for Defendants.

### ORDER

BUNNING, District Judge.

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (Doc. # 23); and there being no objections filed thereto; and the Court being sufficiently advised;

**IT IS HEREBY ORDERED** as follows:

(1) That the Report and Recommendation of the United States Magistrate Judge (Doc # 23) is hereby **adopted** as the findings and conclusions of the Court;

(2) That the Court declines to exercise its discretionary jurisdiction over Counts I

and II of Plaintiff's Complaint, and Counts I and II are therefore **dismissed without prejudice;**

(3) That the Court hereby **retains jurisdiction** over Counts III and IV of Plaintiff's Complaint; and,

(4) That the case shall proceed on the remaining Counts III and IV in accordance with the Court's Scheduling Order of April 24, 2002 (Doc. # 10).

### *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

PATTERSON, United States Magistrate Judge.

### *I. INTRODUCTION*

This matter is presently before the court upon the response by the parties (Record Nos. 19–22) to the undersigned's July 19, 2002, show cause order (Record No. 17), directing Plaintiff, Bituminous Casualty Company ("Bituminous"), to show cause why this Declaratory Judgment action should not be dismissed. Now fully briefed and ripe for decision on that issue, and for the reasons set forth below, the undersigned recommends that this court decline to exercise its discretionary jurisdiction over Counts I and II of the Complaint, which should therefore be dismissed without prejudice and that jurisdiction over Counts III and IV be retained for appropriate disposition.

### *II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

A. *Factual Background*

On June 22, 2001, Art Potter and several other individuals (hereinafter "Underlying Plaintiffs") filed suit in the Pike Circuit Court, alleging in their complaint that Perry Combs, d/b/a Combs Logging ("Combs"), John Collins and Mountain Heritage Flooring, Inc., ("Mountain Heritage") intentionally trespassed on Underlying Plaintiffs' land by removing timber and damaging roads. (Record No. 1, Ex. B.) On July 27, 2001, Collins and Mountain Heritage filed an answer to the complaint and a cross-claim against Combs in the state court action. (Record No. 1, Ex. C.) The cross-claim sought indemnification and release from the damages alleged by Underlying Plaintiffs. (*Id.*) In their cross-claim, Collins and Mountain Heritage asserted that a contract was entered into whereby Combs agreed to indemnify, release and hold harmless Collins and Mountain Heritage for any alleged damages resulting from logging activities. (*Id.*) Although he was personally served in the state court action on August 7, 2001, Combs did not answer or otherwise respond to the Underlying Plaintiffs' complaint or the cross-claim filed by Collins and Mountain Heritage. (Record No. 1, p. 4.)

On September 5, 2001, Underlying Plaintiffs filed a Motion for Default Judgment against Combs on the claims in their original complaint in the state court action. (*Id.*) Additionally, on October 5, 2001, Collins and Mountain Heritage filed a Motion for Default Judgment in relation to the cross-claim against Combs. (*Id.*) Underlying Plaintiffs' motion was orally sustained by the Pike Circuit Court on October 12, 2001, and the default judgment on the cross-claim was entered on November 15, 2001. (*Id.;* Record No. 6, p. 4.)[1] Underly-

---

1. The Complaint filed by Bituminous (Record No. 1) and the Answer filed by Collins and Mountain Heritage (Record No. 6) in this declaratory judgment action refer to the default judgments in the Pike Circuit Court on the complaint and cross-claim against Combs.

The directives and exact language of the default judgments cannot be determined from the record in this case because only a copy of the *motions* for default judgment have been filed of record. (Record No. 1, Ex. D–E.) Defendants Collins and Mountain Heritage

ing Plaintiffs amended their complaint on November 13, 2001, adding additional tracts of land on which Combs allegedly trespassed. (Record No. 20, Attached Motion to Amend Complaint and Amended Complaint.) Although Combs did not answer the amended complaint, a default judgment has not been entered on the additional claims.

Bituminous, Combs's general liability insurance carrier, states that it did not receive notice of the state court action until October 11, 2002, one day before Underlying Plaintiffs' default judgment motion was orally sustained. (Record No. 19, pp. 2–3.) Bituminous has made numerous attempts to contact Combs regarding the underlying state action. (*Id.* at p. 3.) Bituminous has not provided a defense to Combs in the underlying action based on its assertions that Combs failed to notify Bituminous of the pending state action and that the policy does not cover Combs's alleged intentional trespass. (*Id.*)

Bituminous filed this action on February 7, 2002, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 as to its defense and indemnification obligations under the Commercial General Liability Policy issued to Combs. Combs was personally served with summons and a copy of the Complaint on February 15, 2002, but did not answer or otherwise respond. (Record No. 3, p. 2.) Defendants Collins and Mountain Heritage filed an Answer on March 11, 2002. (Record No. 6.) On April 30, 2002, Defendants Collins and Mountain Heritage filed a motion asking the Pike Circuit Court to hold the underlying action in abeyance until the proceedings before this court are resolved. (Record No. 19, Ex. A.) The motion was granted on May 6, 2002, postponing the state court proceed-

ings until November 1, 2002, when a status conference was to be held. (*Id.*)

Bituminous's Complaint herein pleads four (4) primary grounds for its claim that it does not owe coverage for any alleged harm resulting from Combs's logging activities. (Record No. 1, pp. 5–10.) In Count I of the Complaint, Bituminous pleads that the policy only covers property damage that is the result of an "occurrence," which is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at p. 6.) Bituminous further alleges that the insurance policy excludes coverage for property damage that is expected or intended from the standpoint of the insured, and that Combs acted intentionally when he cut timber from the Underlying Plaintiffs' land. (*Id.* at pp. 6–7.)

In Count II, Bituminous states that Combs is not entitled to coverage under the endorsement entitled "AMENDMENT—LOGGING AND LUMBERING OPERATIONS LIMITATION OF COVERAGE (ACCIDENTAL OVERCUT OF TIMBER)." (*Id.* at pp. 7–8.) That provision states that subject to twenty (20) percent participation by the insured, Bituminous will pay eighty (80) percent, up to $40,000, on the insured's behalf for property damage arising out of an "accidental overcut of timber." (*Id.*) The provision defines accidental overcut as "the cutting of timber done by you or for you on land where you were not legally entitled to cut and which was cut as a result of a bonafide mistake regarding the boundaries in which you were legally entitled to cut." (*Id.*) Bituminous contends that the alleged intentional trespass by Combs onto Underlying Plaintiffs' land was not an "accidental

refer to a November 15, 2001 order of default judgment in their reply memorandum (Record No. 20, p. 5) to Bituminous's response to

the show cause order, but contrary to the statement in that reply, a copy of that default judgment is not attached to that pleading.

overcut," and therefore is not entitled to coverage under this provision. (*Id.*)

Count III of the Complaint asserts that Combs is not entitled to coverage or a defense because he has breached the policy conditions listed in SECTION IV of the policy. (*Id.* at pp. 8–10.) SECTION IV Paragraph 2 delineates the insured's "Duties In The Event Of Occurrence, Offense, Claim Or Suit." (*Id.*) Among these is the duty of the insured to notify Bituminous of any claim or suit and to cooperate in the defense against that suit. (*Id.*) Bituminous asserts that Combs did not properly notify it of the pending state court action, which resulted in irreversible prejudice. (*Id.*) Therefore, Bituminous contends that Combs's failure to satisfy the condition precedent of notifying Bituminous of the state court action relieves Bituminous from all defense and coverage obligations. (*Id.*)

Count IV of the Complaint states Collins and Mountain Heritage do not qualify as insureds under the policy issued to Combs. (*Id.* at 10–11.) Bituminous does recognize that Defendants Collins and Mountain Heritage have claimed a right to coverage under an indemnification contract entered into with Combs in connection with the logging activity. (*Id.*) Bituminous argues that Collins and Mountain Heritage are not entitled to any rights not available to its insured, Combs. (*Id.*) Because Bituminous has alleged that Combs is not entitled to a defense or coverage due to the reasons set forth in Counts I—III of the Complaint, Bituminous asserts that Defendants Collins and Mountain Heritage have no right to indemnification under the Bituminous policy. (*Id.*)

B.  *Relevant Procedural History*

■  This case was referred to the undersigned by order of the presiding district judge, Hon. David L. Bunning, dated April 24, 2002, with directions to resolve discovery disputes, and to conduct a telephonic conference and a settlement conference. (Record No. 10.) At the telephonic conference held on July 17, 2002, as memorialized by order dated July 19, 2002, Bituminous was directed to show cause, by memorandum brief, why this court should not exercise its discretion to dismiss this action, without prejudice, by virtue of the underlying state court action now pending in the Pike Circuit Court. (Record No. 17.) An order to show cause why the action should not be dismissed is a proper method by which the court, *sua sponte*, may raise and resolve the issue of whether it should exercise its discretionary jurisdiction in a declaratory judgment action. *Westfield Insurance Company v. Stone Harbor Construction, Inc.*, 106 F.Supp.2d 956, 957 (W.D.Mich.2000). The primary basis of that show cause order was the decision of the United States Court of Appeals for the Sixth Circuit in *Scottsdale Insurance Company v. Roumph*, 211 F.3d 964 (6th Cir.2000). In that case, the court listed a set of factors that a district court must consider in assessing the propriety of exercising its discretionary jurisdiction over a declaratory judgment action concerning insurance coverage when the insured has been sued for alleged tort liability in state court. *Id.* at 968. These factors will be discussed in detail below.

By order dated July 19, 2002, (Record No. 18) Judge Bunning referred the issues raised by the July 19, 2002, show cause order (Record No. 17) to the undersigned for appropriate disposition. Bituminous filed its response to that show cause order on August 19, 2002. (Record No. 19.) Collins and Mountain Heritage filed a response to Bituminous's memorandum on September 11, 2002. (Record No. 20.) On September 19, 2002, Bituminous filed a reply to the memorandum filed by Collins and Mountain Heritage. (Record No. 21.) Bituminous then supplemented that reply

on September 20, 2002. (Record No. 22.) Although he was served with a copy of the court's show cause order, Defendant Combs has not answered or otherwise responded thereto. (Record No. 17, Certificate of Mailing). All briefing in response to the show cause order having thus been completed, the matter is now ripe for review.

### III. ANALYSIS

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, gives federal district courts the discretion whether to exercise their jurisdiction in actions brought pursuant to the Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Northern Insurance Company of New York v. Addison Products, Inc.*, 148 F.Supp.2d 859, 860 (E.D.Mich.2001). The Declaratory Judgment Act has always been "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Roumph*, 211 F.3d at 969. The Act is an enabling statute which provides that a court "may declare" the rights of interested parties. 28 U.S.C. § 2201(a). " 'There is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court' to hear a declaratory judgment action." *Roumph*, 211 F.3d at 969 (quoting *Wilton*, 515 U.S. at 278–88, 115 S.Ct. 2137).

In *Roumph*, the Sixth Circuit listed five factors for the district court to consider when assessing the propriety of a declaratory judgment action concerning insurance coverage when the insureds have been sued for alleged tort liability in state court. *Roumph*, 211 F.3d at 968. These five factors are: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or

"to provide an arena for a race for *res judicata;* " (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Id.* The parties' responses to this court's show cause order will be analyzed according to these factors.

#### A. Counts I and II of the Complaint

Count I of the Complaint asserts that Combs in not entitled to a defense or coverage under the general liability policy with Bituminous because the alleged damage related to logging activities was not an "occurrence" eligible for coverage as defined in the policy. (Record No. 1, pp. 5–6.) Count I further alleges that Combs's alleged intentional trespass falls within a specific exclusion in the general liability policy for property damage that is expected or intended from the standpoint of the insured. (*Id.* at pp. 6–7.) Similarly, Count II of the Complaint pleads that Combs is not entitled to coverage under the accidental overcut of timber provision because his actions constitute an intentional trespass, not a bonafide mistake. (*Id.* at pp. 7–8.) Thus, the underlying questions in Counts I and II are whether Combs's actions were in fact intentional and whether his actions exclude him from the rights to coverage and a defense under the Bituminous policy. The propriety of this court's exercise of jurisdiction over Counts I and II will be analyzed according to the factors in *Roumph*.

##### 1. Whether the judgment would settle the controversy

Plaintiff Bituminous argues that a declaratory judgment by this court would settle the controversy between the parties. (Record No. 19, pp. 5–6.) Specifically, Bituminous argues that there are no remaining factual issues to be determined in the

underlying action that are necessary to determine the extent of coverage under the insurance policy. (*Id.* at p. 5.) As a basis for this argument, Bituminous points out that a default judgment has been entered against Combs in the underlying action for intentional trespass. (*Id.*) Bituminous asserts that because liability has been determined in the underlying action, the only remaining issue is a legal question: whether Combs's actions are covered under the general liability policy. (*Id.*)

In the response filed by Collins and Mountain Heritage, Defendants contend that the question of coverage cannot presently be resolved because there are underlying facts which have yet to be resolved in the pending state court action. Defendants advance two (2) primary arguments in support of their position. First, Defendants assert that conflicting default judgments have been entered in the pending state court proceedings. (Record No. 6, p. 6.) In addition to the default judgment entered against Combs on the underlying complaint for intentional trespass, Defendants assert that a default judgment based on negligence, breach of contract and indemnification was entered against Combs on the underlying cross-claim. (*Id.*) Because of the conflicting default judgments, Defendants contend that the default judgment on the underlying complaint is not conclusive as to whether Combs is precluded from coverage. (*Id.*) Second, Defendants assert that Underlying Plaintiffs' amended complaint is still pending in the state court. (Record No. 20, p. 2.) A default judgment has not been entered on the additional claims brought in the amended complaint. (*Id.*) Thus, Defendants argue that the liability issue has not been resolved in the pending state court action as to these new claims. (*Id.* at p. 6.) According to Defendants, a declaratory judgment by this court would not resolve factual issues still pending before the state court. (*Id.*)

In its reply to Defendants' response, Bituminous contends that the underlying amended complaint contains the same allegations of intentional trespass against Combs. (Record No. 21, p. 2.) The only addition is another tract of land that was inadvertently omitted from the underlying complaint. (*Id.*) Bituminous argues that any remaining factual issues in the pending state court action have no bearing on whether an intentional trespass is covered by the insurance policy. (*Id.* at p. 3.)

Although a decision on the coverage issues addressed in Counts I and II of the Complaint may "resolve the controversy" as such between Bituminous and Defendants Collins and Mountain Heritage, the analysis of the four remaining factors under *Roumph* make this first factor relatively insignificant. As discussed below, the concerns under the remaining four factors substantially outweigh any benefit attained by resolving the coverage question raised in Counts I and II.

2. *Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue*

Without a specific explanation, Bituminous asserts that a declaratory judgment by this court would serve a useful purpose by "clarifying the legal relations between the parties by determining their rights under the subject insurance policy." (Record No. 19, p. 7.) Defendants cite *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir.1990), for the proposition that any useful purpose which might be served by "clarifying the legal relations in issue" would come at the expense of "increasing friction between our federal and state courts," the fourth factor in *Roumph*. Neither side makes a detailed effort to explain the application of the "useful purpose" factor to the case *sub judice*.

■ A declaratory action does not serve a "useful purpose" when insurance coverage questions can only be resolved based on facts yet to be determined in the state courts. *Mercier,* 913 F.2d at 279; *Addison Products,* 148 F.Supp.2d at 862. To resolve the legal issues in Counts I and II of the Complaint, this court would first need to resolve the factual issues regarding Combs's actions in his logging activities on Underlying Plaintiffs' land. Specifically, this court would have to decide whether Combs acted intentionally or negligently. As stated above, Bituminous asserts that this issue has been resolved by the default judgment entered against Combs on the underlying complaint for intentional trespass. But, according to the memoranda filed in this action, the Pike Circuit Court has issued conflicting default judgments. (Record No. 6, p. 6.) The underlying complaint avers that Combs acted intentionally, while the cross-claim asserts that Combs acted negligently. (*Id.*) Because the Pike Circuit Court entered default judgments on both the underlying complaint and the cross-claim without clarification as to the nature of Combs's actions, this court cannot and should not attempt to clarify the legal relations at issue by determining whether Combs acted intentionally or negligently. A decision on Counts I and II of this declaratory action would depend on a resolution of conflicting default judgments and underlying factual issues in the state court case, and therefore, this second factor weighs heavily in favor of dismissing Counts I and II of this action without prejudice.

3. *Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"*

Bituminous argues that there is no evidence to suggest that it is using this federal declaratory judgment action for purposes of procedural fencing or a race for *res judicata.* (Record No. 19, p. 7.) Bituminous contends that the fact that a default judgment has already been entered on the underlying complaint "removes any consideration that Bituminous filed this action in federal court as 'procedural fencing' or to win a 'race for *res judicata.*'" (*Id.*) Defendants Collins and Mountain Heritage argue that Bituminous is using this declaratory judgment action to obtain *res judicata* on the amended complaint still pending before the Pike Circuit Court. (Record No. 20 p. 5.) Specifically, Defendants assert that the default judgment entered at the state court level concerns one small parcel of land. (*Id.*) A default judgment has not been entered on the amended complaint, which adds a much larger parcel. (*Id.*) Therefore, Defendants contend that Bituminous is using this declaratory judgment action to avoid providing a defense or coverage for the larger claims asserted in the amended complaint. (*Id.*)

This factor also weighs heavily in favor of dismissal. A determination as to coverage under the insurance policy would require a determination whether Combs acted intentionally. The issues concerning liability under the amended complaint before the Pike Circuit Court will also require a determination as to whether Combs acted intentionally. Therefore, a premature declaratory judgment based on Counts I and II of the Complaint would create *res judicata* problems. For example, if this court were to find that Combs is not covered under his insurance policy with Bituminous because he acted intentionally, the Pike Circuit Court, under principles of *res judicata,* would be required to find in the liability stage that Combs acted intentionally. With the liability issue contained in the amended complaint still pending for decision in the state court action, a declaratory judgment on

the policy's definition of "occurrence," the intentional act exclusion and the accidental overcut provision would prematurely and improperly resolve factual issues on liability. Accordingly, the third factor in *Roumph* weighs heavily in favor of dismissing Counts I and II of the Complaint.

4. *Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction*

Bituminous asserts that issues involving insurance coverage are entirely distinct from liability issues already decided by virtue of a default judgment in the state court proceedings, and therefore will not create friction between the federal and state courts. (Record No. 19, p. 7.) Bituminous also points out that the Pike Circuit Court has been advised that this declaratory judgment action is pending before this court. (*Id.*) Additionally, Bituminous contends that friction will be avoided because Defendants Collins and Mountain Heritage filed a motion on April 30, 2002, to hold the state court proceedings in abeyance, which was granted by the Pike Circuit Court on May 6, 2002. (*Id.*) Defendants Collins and Mountain Heritage discuss the relationship that this fourth factor has with the other factors in *Roumph,* but never apply the factor directly to the case *sub judice.* (Record No. 6, p. 4.) Defendants do assert that they requested that the state court proceedings be held in abeyance because they felt Bituminous was attempting to take advantage of state court proceedings to gain an advantage in this declaratory judgment action. (*Id.* at p. 7.)

The Sixth Circuit has repeatedly held that when a state court action is pending, that court is "in a better position than a federal district court to decide an insurance declaratory judgment action that involves underlying factual issues." *Scottsdale Insurance Co. v. Roumph,* 18 F.Supp.2d 730, 735 (E.D.Mich.1998), aff'd 211 F.3d 964 (6th Cir.2000); *Addison Products,* 148 F.Supp.2d at 862. The Sixth Circuit has also recognized three additional factors to consider when such federalism concerns are presented: (1) whether the underlying factual issues are important to an informed resolution of the declaratory action; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual issues and state law and/or public policy, or whether federal common or statutory law dictates. *Roumph,* 211 F.3d at 968.

Underlying factual issues are important to an informed resolution of Counts I and II of the Complaint. To make an informed resolution of the coverage issues under the definition of "occurrence," the intentional act exclusion and the accidental overcut provision, this court would have to decide whether Combs acted intentionally. The state trial court is in a better position to resolve these facts, which were first alleged in the complaint filed in that court against Combs. Contrary to Bituminous's position, the issue is not resolved by the default judgment on the underlying complaint due to the existence of a conflicting default judgment on the cross-claim. Those facts must be, and in the pending state court action will be, resolved in accord with Kentucky law, with which a state court is more familiar. And, there are no controlling principles of federal common law or statutory law that apply to the substantive issues in this case, and thus, there are no federal issues which this court is called upon to resolve. Accordingly, the fourth factor in *Roumph* weighs heavily in favor of dismissing Counts I and II of this action.

5. *Whether there is an alternative remedy which is better or more effective*

As the district court in *Addison Products* indicated, the Sixth Circuit has held that a separate civil state court action on defense and indemnity issues is usually a better and more effective remedy than a declaratory action in federal court. 148 F.Supp.2d at 863. *See also Allstate Insurance Co. v. Mercier,* 913 F.2d 273, 278 (6th Cir.1990) (concluding that the state court deciding the underlying tort action would be "in a superior position" to determine the indemnity issues); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Insurance Co.,* 791 F.2d 460, 462–63 (6th Cir.1986) (describing a indemnity action after conclusion of the state court trial as "a superior alternative remedy"); *American Home Assurance Co. v. Evans,* 791 F.2d 61, 62 (6th Cir.1986) (describing "a traditional indemnity action" as "a more appropriate means of enforcement"). Nothing in either of the parties' briefs in this case suggest otherwise. Bituminous can bring an appropriate defense and indemnification action in state court or a second action for declaratory relief in this court after the issues concerning the conflicting default judgments and the amended complaint have been resolved in the pending Pike Circuit Court action. Accordingly, the fifth factor in *Roumph* weighs in favor of dismissing Counts I and II of this action without prejudice.

Upon consideration of the arguments presented by both parties on the propriety of this courts exercise of jurisdiction over Counts I and II of the Complaint, the undersigned concludes that all five factors in *Roumph* weigh heavily in favor of dismissal of Counts I and II of this action.

B. *Count III of the Complaint*

■ In Count III of the Complaint, Bituminous pleads that Combs is not entitled to a defense or coverage because he breached the conditions listed in Section IV of the policy which require the insured to notify Bituminous of any civil action. (Record No. 1, pp. 8–10.) Defendants Collins and Mountain Heritage argue that Bituminous did have sufficient notice of the underlying action, but chose not to attempt a defense. The propriety of this court's exercise of jurisdiction over Count III will be analyzed according to the factors in *Roumph.*

1. *Whether the judgment would settle the controversy*

Bituminous contends that whether Combs gave Bituminous notice of the state court action is not an issue in the underlying action, nor is it relevant to any claims pending in that underlying action. (Record No. 21, p. 3.) Bituminous asserts that the notice issue is only relevant to the issue of insurance coverage under the policy. (*Id.*) Because the issue of notice is pending before this court, Bituminous argues that a declaratory judgment would settle the controversy. (*Id.*)

Defendants argue that there are unresolved issues of fact in regard to the notice received by Bituminous. (Record No. 20, p. 5.) Specifically, Defendants allege that Bituminous had enough time to attempt a defense before the default judgments were entered, but instead chose to sit idle. (*Id.*) Defendants do not directly address how a judgment on this issue would not settle the controversy.

Bituminous is correct that the issues concerning whether notice was received by Bituminous are not pending before the state court. In fact, there is nothing to suggest that the notice issue was ever raised in the state court. Bituminous is not a party to the state court action, nor is it providing a defense for Combs in that action. To resolve this controversy, this court would only be required to interpret

the provisions in Section IV of the policy as they relate to the facts concerning the alleged failure of Combs to notify Bituminous of the pending state court action. Unlike the issues surrounding the nature of Combs's actions in regard to cutting timber, there are no pending and unresolved issues of fact in the state court proceedings concerning the policy conditions in Section IV. If this court were to decide whether Combs did in fact breach the policy conditions by failing to give proper notice to Bituminous, then, as Bituminous contends, the controversy would be resolved. Thus, the first factor in *Roumph* weighs in favor this court asserting jurisdiction over Count III of the Complaint.

2. *Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue*

As stated in Section III(A)(2) above, a declaratory action does not serve a "useful purpose" when insurance coverage questions can only be resolved based on facts yet to be determined in the state courts. *Mercier,* 913 F.2d at 279; *Addison Products,* 148 F.Supp.2d at 862. The lack of notice alleged by Bituminous is not pending before the state court. Although Defendants claim that there are unresolved issues of fact concerning the notice issue, it is clear that those facts will not be determined in the state court. Bituminous has properly brought this issue before this court asking for a declaration that Combs breached the notice requirements of the policy, and therefore, he is not entitled to coverage. Bituminous further alleges that because Combs has breached the policy conditions requiring notice, Defendants Collins and Mountain Heritage are not entitled to indemnification. Discovery on this sole issue of whether Combs did in fact breach the policy conditions requiring notice would lead to a clarification of the legal relations at issue, therefore serving a "useful purpose." Accordingly, the second factor in *Roumph* weighs in favor this court exercising its jurisdiction over Count III of the Complaint.

3. *Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"*

The third factor in *Roumph* also weighs in favor of this court asserting jurisdiction over Count III of the Complaint. As Bituminous points out, the issue of whether Bituminous received proper notice of the suit is not pending before the state court. (Record No. 21, p. 3.) Defendants argue that there are still unresolved factual issues concerning whether Bituminous received proper notice of the suit, and therefore a declaratory judgment action on this issue is not appropriate. (Record No. 20, p. 5.) Because this issue is not pending before the state court, there is no risk of creating improper *res judicata.* The unresolved factual issues alleged by Defendants could properly be resolved through discovery in this declaratory action. Also, there is no evidence that the declaratory remedy is being used for "procedural fencing." Accordingly, the third factor in *Roumph* weighs in favor of asserting jurisdiction over Count III of the Complaint.

4. *Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction*

Bituminous asserts that the notice issue is not relevant to any issue currently pending before the state court. ( Record No. 21, p. 4.) Bituminous also contends that friction will be avoided because Defendants Collins and Mountain Heritage filed a motion on April 30, 2002, to hold the state

court proceedings in abeyance, which was granted by the Pike Circuit Court on May 6, 2002. (Record No. 19, p. 7) Defendants Collins and Mountain Heritage discuss the relationship that this fourth factor has with the other factors in *Roumph*, but never apply the factor directly to the case *sub judice*. (Record No. 6, p. 4.) Defendants do assert that they requested that the state court proceedings be held in abeyance because they felt Bituminous was attempting to take advantage of state court proceedings to gain an advantage in this declaratory judgment action. (*Id.* at p. 7.)

The Sixth Circuit has repeatedly held that when a state court action is pending, that court is "in a better position than a federal district court to decide an insurance declaratory judgment action that involves underlying factual issues." *Roumph*, 18 F.Supp.2d 730, 735 (E.D.Mich.1998), aff'd 211 F.3d 964 (6th Cir.2000); *Addison Products*, 148 F.Supp.2d at 862. The Sixth Circuit has also recognized three additional factors to consider when such federalism concerns are presented: (1) whether the underlying factual issues are important to an informed resolution of the declaratory action; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual issues and state law and/or public policy, or whether federal common or statutory law dictates. *Roumph*, 211 F.3d at 968.

The application of these three additional factors also weighs in favor of this court exercising its jurisdiction over Count III of the Complaint. Underlying factual issues are not important to an informed resolution of the notice issue alleged by Bituminous. The state court is not in a better position to evaluate the factual issues concerning the alleged lack of notice given by

Combs because that issue is not pending before the state court. Although federal common or statutory law does not dictate this issue, the factual issues concerning the alleged breach of the notice requirements in the policy do not have a close nexus to state law and/or public policy. Accordingly, this factor weighs in favor of retaining Count III of this declaratory judgment action.

### 5. Whether there is an alternative remedy which is better or more effective

As stated in Section III(A)(5) above, a separate state court civil action on defense and indemnity issues is usually a better and more effective remedy than a declaratory judgment action in federal court. *Addison Products*, 148 F.Supp.2d at 863. *See also Mercier*, 913 F.2d at 278 (concluding that the state court deciding the underlying tort action would be "in a superior position" to determine the indemnity issues); *Manley, Bennett, McDonald & Co.*, 791 F.2d at 462–63 (describing a indemnity action after conclusion of the state court trial as "a superior alternative remedy"); *Evans*, 791 F.2d at 62 (describing "a traditional indemnity action" as "a more appropriate means of enforcement"). Here, the state court deciding the underlying tort action will be dealing with issues entirely separate from the notice provisions of the Bituminous policy. Whether the state court action has concluded its proceedings on the liability issues will not have any effect on the notice issue alleged in Count III of the Complaint. Therefore, a separate state court action cannot be considered to be a better or more effective remedy. In fact, resolution of the notice issue in federal court may resolve the coverage question before the conclusion of a separate state court proceeding, which in turn may prevent Bituminous from unnecessarily expending time and resources to provide a defense on the underlying amended com-

plaint. Therefore, the fifth factor in *Roumph* weighs in favor of this court asserting jurisdiction over Count III of the Complaint.

Accordingly, the undersigned concludes that a decision on Count III of the Complaint would not create *res judicata* problems or unnecessary friction with the state court. More importantly, a decision by this court would settle the controversy and clarify the legal relations at issue. Thus, the factors in *Roumph* weigh in favor of this court asserting jurisdiction over Count III of the Complaint. Extensive research of case law applying the factors listed in *Roumph* has not produced any published authority that would prevent this court from retaining jurisdiction over this Count of the Complaint while dismissing Counts I and II. Accordingly, the undersigned recommends that this court assert its discretionary jurisdiction over Count III of the Complaint.

### C. *Count IV of the Complaint*

Count IV of the Complaint alleges that Defendants Collins and Mountain Heritage are not insureds under the Bituminous policy. (Record No. 1, pp. 10–11.) Additionally, Count IV alleges that Defendants Collins and Mountain Heritage are not entitled to indemnification because Combs is not entitled to coverage for the reasons set forth in Counts I–III of the Complaint. (*Id.*) Defendants admit that they are not insureds under the policy, but contend that they are entitled to indemnification because of their contract with Combs. (Record No. 6, p. 9.)

Because Combs has never answered or otherwise responded to any pleading or order in this case, Count IV of the Complaint summarizes the exact issue pending before this court, whether Collins and Mountain Heritage are entitled to indemnification from Bituminous for the actions committed by Combs. Because Bitumi-

nous claims Combs is not entitled to coverage, and therefore Collins and Mountain Heritage are not entitled to indemnification, this court cannot decide the issue raised in Count IV without asserting jurisdiction over one of the issues contained in Counts I–III of the Complaint. As stated above, the factors in *Roumph* weigh in favor of retaining count III of this action, and therefore, the undersigned concludes that Count IV should be retained as well.

### IV. *CONCLUSION*

Upon consideration of the parties' responses to the undersigned's show cause order (Record No. 17) in light of the five factors set forth in *Roumph,* the undersigned concludes that those factors, collectively, weigh in favor of this Court declining to exercise its discretionary jurisdiction over Counts I and II of the Complaint, which should therefore be dismissed without prejudice. As to Counts III and IV of the Complaint, the undersigned recommends that this Court retain its discretionary jurisdiction over these claims and proceed with appropriate disposition, in accord with the pretrial and trial schedule previously set in this case by Judge Bunning's Scheduling Order dated April 24, 2002. (Record No. 10.)

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813, 814 (6th Cir.1984), aff'd, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Holbrook,* 794 F.2d 1152, 1154–55 (6th Cir.1986.) Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right to appeal. *See Howard v. Secretary of Health and Human Services,* 932 F.2d

750

505, 509 (6th Cir.1991). A party may file a response to another party's objections with ten (10) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

Dec. 4, 2002.